O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCIE HENDERSON,<br><br>        Plaintiff,<br><br>   v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>        Defendants. | CASE NO.: CV 05-3019 ABC (CTx)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION |

Pending before the Court is Plaintiff Ocie Henderson's ("Plaintiff") motion for summary adjudication. That motion seeks a ruling that Defendants Grady Miles and Ken McWaid (hereinafter referred to individually by last name and collectively as "Defendants") are liable for violating Plaintiff's Fourth Amendment rights. Having considered the parties' submissions, the case file, and counsels' arguments, the Court DENIES the motion.

**I.   PROCEDURAL BACKGROUND**

Plaintiff filed his First Amended Complaint on January 9, 2006, alleging civil rights violations under 42 U.S.C. § 1983. On May 8, 2006, Defendants filed a motion for summary judgment, which the Court largely denied with respect to the claims against Miles and McWaid.

(See Docket # 62 ("Initial MSJ Order")).[1]  More specifically, the Court ruled that Plaintiff raised triable issues of fact as to whether Defendants unlawfully arrested him without probable cause and whether McWaid may be liable as a supervisor.  The Court further ruled that Plaintiff raised triable issues of fact as to whether the search of his vehicle was unlawful.  Lastly, the Court ruled that, taking Plaintiff's version of the events as true, Defendants were not entitled to qualified immunity.

Defendants filed an interlocutory appeal of this Court's denial of their qualified immunity defense.  The Ninth Circuit affirmed.  Following issuance of the Ninth Circuit Mandate, Plaintiff filed the instant motion for summary adjudication.  Defendants opposed the motion on January 30, 2009.  Plaintiff did not initially file a reply brief, but did after the Court instructed him to do so.  Defendants filed a response to the reply.  The motion came on for hearing on April 6, 2009.

## II.   FACTUAL BACKGROUND

This case arises out of the arrest and detention of Plaintiff on August 2, 2004 by Miles and McWaid, both of the Los Angeles County Sheriff's Department, and their subsequent search of Plaintiff's person, business and vehicle.  Plaintiff is the owner and manager of Post Oh Business Center ("Post Oh"), located at 605 West Huntington Drive, Monrovia, California.  Post Oh is a Commercial Mail Receiving Agency ("CMRA").  Persons who maintain a post office box at a CMRA are required under California law to complete a United States Postal

---

[1] The Court granted the motion with regard to the claims against Miles and McWaid in their official capacities.  The Court also granted the motion with regard to the validity of the warrant used to search Plaintiff's business.

```
 1  Service Form 1583.  A 1583 form is an application for delivery of mail
 2  through an agent, the CMRA, and requires information such as the
 3  applicant's name, address, telephone number, and two forms of
 4  identification.  Cal. Bus. & Prof. Code §§ 17538.5(c), 22780(a).  A
 5  copy of the completed 1583 form is filed with the United States Postal
 6  Service and another copy is retained at the CMRA.  Id. at § 22780(b).
 7  Section 22780(b) provides that "[u]pon the request of any law
 8  enforcement agency conducting an investigation, the commercial mail
 9  receiving agency shall make available to that law enforcement agency
10  for purposes of that investigation and copying, its copy of the Postal
11  Service Form 1583."  A violation of the statute is an infraction,
12  punishable by fine.  Id. at § 22780(c).
13       The facts here are largely undisputed.  See Defs' Statement of
14  Genuine Issues ("DS") (Docket #86).  It is undisputed that Miles
15  entered Post Oh on August 2, 2004, at approximately 9:00 a.m., for the
16  purpose of verifying the address of a suspect in an identity theft
17  investigation.  DS at ¶ 12.  Miles informed Plaintiff, who was behind
18  the counter, that he was a detective working on a criminal
19  investigation and presented his identification.  Id. at ¶ 13.
20  Plaintiff was satisfied that Miles was a peace officer.  Id. at ¶ 14.
21  Miles first asked to see the 1583 forms for every post office box in
22  section 400, then changed the request to forms for boxes 415 to 425.
23  Id. at ¶ 15.  Defendant contends that Plaintiff said that Miles would
24  have to tell Plaintiff specifically which application Miles wanted to
25  see.  Id. at ¶ 16.  Miles replied that the investigation would be
26  compromised if he gave Plaintiff more specific information and that
27  Plaintiff was required under § 22780 to show him the requested forms.
28  Id. at ¶ 17.  Plaintiff stated that "If it's an argument you're
```

3

looking for, you're not going to get it." Id. at ¶ 18. Plaintiff then continued to perform other work. Id. Miles also asked Plaintiff for a blank 1583 form, which Plaintiff provided. Id. at ¶ 19. Miles left the store shortly thereafter. Id. at ¶ 20. It is further undisputed that Plaintiff never gave Miles any completed 1583 forms. Id. at ¶ 21.

After leaving Post Oh, Miles prepared a search warrant and affidavit for the search and seizure of "US Postal Forms 1583," as well as "any other business records associated with the above mailbox applications." Id. at ¶ 22. Defendant McWaid approved and signed off on the warrant preparation checklist. Id. at ¶ 23. The warrant was subsequently signed by Judge Teri Schwartz of the Pasadena Superior Court. Id. at ¶ 24. Miles then returned to Post Oh on the afternoon of August 2, 2004, accompanied by McWaid and two officers from the Monrovia Police Department. Id. at ¶ 25. At the time the officers arrived at Post Oh to execute the warrant, Plaintiff was not present. Id. at ¶ 26. Miles was informed by Plaintiff's coworker that Plaintiff had left Post Oh for business reasons. Id. at ¶ 28. Plaintiff arrived at Post Oh in a vehicle after the search was complete. Id. at ¶ 29. Upon his return, Plaintiff was arrested by Miles for obstruction of justice in violation of California Penal Code § 148.[2] Id. at ¶ 27. Plaintiff was searched and keys to the vehicle were taken from him as part of the arrest inventory. Id. at ¶ 29. Plaintiff was detained, handcuffed, and held in custody for several hours. Id. at ¶ 30. His vehicle, parked adjacent to the doorway of the business, was also searched. Id. at ¶ 31.

---

[2] Unless otherwise specified, all further citations to the Penal Code shall refer to the California Penal Code.

4

McWaid documented and supervised the incident involving the search and arrest. Id. at ¶ 33. McWaid participated in the search and seizure of Plaintiff's person, including the inventory of Plaintiff's money. Id. at ¶ 34.

### III. DEFENDANTS' NEWLY-ASSERTED TESTIMONY THAT PLAINTIFF AFFIRMATIVELY REFUSED TO COMPLY WITH MILES'S ORDERS.

While the facts are largely undisputed, the parties disagree on a key factual issue. According to the declaration of Miles filed on remand, during the August 2, 2004 incident between Plaintiff and Miles, Plaintiff purportedly said "Well, I'm not going to let you look at any of [the forms]." Grady Miles Decl. (Docket # 85) ¶ 11. Although summary judgment was previously before the Court, Defendants are asserting to the Court for the first time that Plaintiff affirmatively refused to comply with Miles's orders.[3] Indeed, the Court observed in the Initial MSJ Order that "[t]here is no evidence that Plaintiff ever affirmatively refused to provide the forms." Initial MSJ Order at 11; see also id. at 3. As one might expect, the Court was therefore surprised that, on remand, Miles filed a declaration asserting that Plaintiff made a statement affirmatively refusing to provide him with the form. Moreover, Miles's declaration provides no explanation as to why this assertion is being raised for the first time now. Accordingly, the Court requested briefing on whether that portion of Miles's declaration should be stricken as a sham. (See Docket # 88). Plaintiff filed a brief addressing that

---

[3] The Court also reviewed Defendants' briefs submitted to the Ninth Circuit, which do not include any reference to this purported statement. See Appellants' Opening Brief, 2006 WL 4040443, at *6 (9th Cir. Dec. 11, 2006); Appellants' Reply Brief, 2007 WL 953118 (9th Cir. Jan. 25, 2007).

5

1 issue and Defendants filed a response.

2 　　　The Ninth Circuit has long made clear that "a party cannot create
3 an issue of fact by an affidavit contradicting his prior deposition
4 testimony." <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266 (9th
5 Cir. 1991).  However, the Ninth Circuit has urged caution in applying
6 the rule.  The sham declaration rule applies only when the district
7 court makes a factual determination that a statement in a declaration
8 "flatly contradicts" prior testimony in an attempt to "create" an
9 issue of fact.  <u>Id.</u> at 267.  If such a factual determination cannot be
10 made, it is for the jury to weigh the inconsistent statements in
11 making its determination of credibility.  <u>See id.</u> at 266.

12 　　　Here, Miles was deposed on September 27, 2005, roughly one year
13 after Plaintiff's arrest.  At that deposition, Miles was asked a
14 series of questions related to his interactions with Plaintiff:

15 　　　Q.　How about Mr. Henderson, how was his demeanor at that time?
16 　　　A.　I believe Mr. Henderson was frustrated.
17 　　　Q.　What leads you to conclude that?
18 　　　A.　His final response.
19 　　　Q.　And what was his response?
20 　　　A.　"If it's an argument you're looking for, you're not going to
21 　　　　　get one."
22 　　　Q.　Okay.  **Did he say anything else?**
23 　　　A.　**Nope.**
24 　　　. . .
25 　　　Q.　**Did Mr. Henderson ever tell you he was not going to get**
26 　　　　　**those forms?**
27 　　　A.　**I don't recall.**
28 Exs. In Opp'n to Def's MSJ (Docket # 59), Miles Dep. at 25 (emphasis

added). Thus, Miles's deposition testimony from 2005 is inconsistent with his later declaration.

Nonetheless, the Court cannot make a finding that the declaration is a sham. In an incident report written shortly after August 2, 2004, Miles notes that Plaintiff stated "Well, I'm not going to let you look at any of them." See Def's Statement Re: Plf's Response to Court Order (Docket # 91) Ex. A. It is at least possible that Miles reviewed that report in refreshing his recollection before preparing his declaration on remand. As such, the Court cannot say that the statement is being presented here solely to create an issue of fact. Of course, the Court has serious reservations as to the credibility of Miles's testimony on this point, given his inconsistent deposition testimony and the omission of any reference to it in the prior briefing before this Court and the Ninth Circuit. But the Court concludes that this is an issue of credibility left to the jury.

Accordingly, for purposes of the pending motion, it is a disputed issue of fact whether Plaintiff affirmatively refused to comply with Miles's orders during the August 2, 2004 encounter by saying "Well, I'm not going to let you look at any of them."[4]

**IV.   STANDARD ON A MOTION FOR SUMMARY JUDGMENT**

Summary judgment shall be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show

---

[4] Plaintiff alternatively asserts that Defendants should be judicially estopped from relying on this statement. Plaintiff's argument fails since he has pointed to no advantage gained by Defendants in not raising this purported statement earlier. See Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600 (9th Cir. 1996) (judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.")

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish the essential elements of that party's case, and on which that party would bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Anderson, 477 U.S. at 250-51. "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. Anderson, 477 U.S. at 255.

### V.  DISCUSSION

Plaintiff alleges that he was unlawfully arrested by Defendants without probable cause. Defendants assert that they were justified in arresting Plaintiff for obstruction of a peace officer in violation of Penal Code § 148. Even if Plaintiff establishes that his constitutional rights were violated, he cannot recover if Defendants

are entitled to qualified immunity. See, e.g., Butler v. Elle, 281 F.3d 1014, 1021 (9th Cir. 2002). Qualified immunity exists if Defendants violated Plaintiff's constitutional right, but the right was not clearly established at the time of the violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). For the second prong of the analysis, the Court asks whether "'[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The clearly established "inquiry . . . must be undertaken in the specific context of the case . . .," id. at 201, and with regard to the law at the time of the alleged violations. See Anderson, 483 U.S. at 639. The Court finds in its discretion that it should address the second prong of the qualified immunity analysis first, as that resolves the pending motion. See Pearson v. Callahan, __ U.S. ___, 129 S.Ct. 808, 818 (2009).

    The Court's prior order held that the law was clearly settled that mere non-compliance with police orders would not constitute obstruction under Section 148. Initial MSJ Order at 15-16. The Ninth Circuit affirmed. See Mandate at 7-8. As discussed above, it is now disputed whether Plaintiff affirmatively refused to comply with Miles's orders to see the forms by saying "Well, I'm not going to let you look at any of them." Moreover, taken in the light most favorable to Defendants, Plaintiff's assertion that "If it's an argument you're looking for, you're not going to get it" could also be construed as an act of disobedience. Some case law suggests that even in those circumstances, probable cause would not exist under Section 148. Indeed, the Ninth Circuit has stated that "[i]t is well established

under California law that even 'an outright refusal to cooperate with police officers cannot create grounds for police intrusion' without more." MacKinney v. Nielsen, 69 F.3d 1002, 1006 (9th Cir. 1995) (quoting People v. Bower, 24 Cal.3d 638, 649 (1979)); see also People v. Cressey, 2 Cal.3d 836, 841 n.6 (1970) (refusal to open door for police officer did not violate Section 148); People v. Wetzel, 11 Cal.3d 104, 107-09 (1974) (defendant who stood in doorway of apartment and refused to allow officers to enter did not violate Section 148).

Nonetheless, the Court cannot say that the law was sufficiently clear that qualified immunity cannot be established in this case. In particular, the California Court of Appeal held in 2002 that the refusal to comply with officers' requests constituted a violation of Section 148. In re Muhammed C., 95 Cal. App. 4th 1325, 1330, rev. denied (2002). In that case, officers had five times instructed the defendant to move away from a patrol car. The defendant acknowledged the officers with a hand gesture but did not move as requested. The Court found that the defendant's response was punishable under Section 148 because "there is no mere failure to respond here. Appellant affirmatively responded to the police orders with defiance." Id.[5]

Moreover, the Ninth Circuit has applied Muhammed C. broadly in finding that conduct violates Section 148:

> Smith engaged in at least three or four acts in violation of § 148(a)(1) . . . The acts by Smith include twice refusing to take his hands out of his pockets, reentering his home once; repeatedly refusing to put his hands on his head and come down off the porch, and, finally refusing to put his

---

[5] The Muhammed C. court did not address the seemingly contrary California Supreme Court precedent cited above.

10

```
         hands on his head and turn around.  Each of these acts
         constituted violations of § 148(a)(1) sufficient to warrant
         the filing of a criminal charge.  Each could support a
         conviction under that section for obstructing the criminal
         investigation.
```

Smith v. City of Hemet, 394 F.3d 689, 696-97 (9th Cir. 2005) (citing Muhammed C., 95 Cal. App. 4th at 329-30) (emphasis added); see also Watson v. City of Huntington Beach, No. 06-55235, 2007 WL 4142976, at *1-2 (9th Cir. Nov. 20, 2007) (noting that the defendant "did not fail to respond with alacrity to police orders but rather, like the plaintiff in Muhammed C., 'acknowledged the officers' orders' and 'affirmatively responded to the police orders with defiance'").[6]

In light of Muhammed C. and the Ninth Circuit's interpretation of it, and viewing the disputed facts in the light most favorable to Defendants, it was not clearly settled that Plaintiff's arrest was a constitutional violation.[7]  Hence, Defendants may be entitled to

---

[6] The Court generally does not comment on the quality of the briefing before it, but feels compelled to do so here.  Defendants' briefing was wholly unhelpful to the Court.  In opposing Plaintiff's motion, Defendants submitted a roughly two-page brief.  The argument section of the opposition consists of a few lines.  Nowhere do Defendants cite the above cases or even analyze the issue of qualified immunity in light of their assertion that Plaintiff affirmatively refused to comply with Miles's orders.

[7] Plaintiff also moved for summary adjudication on his claim that his vehicle was searched unconstitutionally.  The Supreme Court has held that a vehicle may be searched as an incident to a contemporaneous, lawful arrest of occupants or recent occupants.  See Thornton v. United States, 541 U.S. 615, 622 (2004).  Plaintiff does not dispute that his vehicle was searched contemporaneously with his arrest nor that he was a recent occupant of it.  Rather, he contends that the vehicle search is unconstitutional because his underlying arrest was not valid.  Given the Court's finding that triable issues of fact remain as to the liability of Defendants for their arrest of
(continued...)

11

qualified immunity. Accordingly, Plaintiff's motion for summary adjudication is denied.

**VI. CONCLUSION**

For the reasons stated above, Plaintiff's motion for summary adjudication is **DENIED**.

**DATED:** April 6, 2009

_____

**AUDREY B. COLLINS**
**UNITED STATES CHIEF DISTRICT JUDGE**

---

[7](...continued)
Plaintiff, the same would be true as to their search of his vehicle. If the law was unsettled that Plaintiff's arrest was unconstitutional, then by extension the law was unsettled as to whether the search of his vehicle as an incident to that arrest was unconstitutional.